UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 4:18-cr-25 |
| v. ) | Judge McDonough |
| ) | Magistrate Judge Lee |
| GRAHAM MITCHELL CLARK, ) | |
| a/k/a "MOLLY POPPINS" ) | |

**UNITED STATES' RESPONSE
TO DEFENDANT'S MOTION FOR DEPARTURE AND/OR VARIANCE**

Comes now the United States of America, by and through J. Douglas Overbey, United States Attorney for the Eastern District of Tennessee, and Kyle J. Wilson, Assistant United States Attorney, and hereby submits its Response to the Motion for Downward Departure and/or Variance (doc. 15) filed by Graham Mitchell Clark ("Clark" or "the defendant") in the above-captioned case.

**BACKGROUND**

On August 29, 2018, the defendant pleaded guilty to a two-count Information charging him with possessing with intent to distribute one gram or more of a mixture and substance containing a detectable amount of lysergic acid diethylamide ("LSD") and possessing with intent to distribute a mixture or substance containing a detectable amount of 3, 4-methylenedioxymethamphetamine ("MDMA"). (Docs. 1, 3, 4, 5.) On February 22, 2017, the defendant pleaded guilty to the charged offense pursuant to a plea agreement with the United States. (*See* Docs. 55, 106.)

The defendant's sentencing hearing is scheduled for November 30, 2018. The Presentence Investigation Report ("PSR") defines an advisory Sentencing Guidelines range of 30 to 37 months' imprisonment. (PSR, ¶ 62.) This range is predicated on a determination that the defendant is eligible for the "safety valve" provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. (*Id.* at ¶ 62-63.)

United States Probation Officer Brent Starnes prepared the PSR. The defendant is represented by attorney Garth Best.

The United States respectfully responds that a custodial sentence at the bottom of the defendant's Guidelines range – or slightly below it, while still including a meaningful term of imprisonment – is appropriate and fulfills the requisite statutory considerations. *See, e.g., United States v. McElheny*, 524 F. Supp. 2d 983, 986-87 (E.D. Tenn. 2007) (articulating sentencing considerations and methodology).

## ANALYSIS

*The Nature and Circumstances of the Offense*

As this Court is aware, drug dealing itself is a serious crime. In this case, however, the seriousness is multiplied by the specific circumstances of the crime. The defendant used the "dark web" to order Schedule I drugs on demand for distribution at various music festivals, including Bonnaroo. (PSR, ¶ 4.) In so doing, he caused the drugs to pass through numerous hands, effectively exposing his product – and its attendant risk – to unwitting participants in his crime; e.g., the increased danger to a mail carrier who may have had the misfortune of transporting the drugs the defendant ordered.

Further, the offense is not merely one of circumstance. The defendant was not conscripted into a drug conspiracy, nor did he turn to drug dealing as a course of last resort. Just the opposite is true. Using quasi-anonymous cryptocurrency, he actively sought out and selected drugs for distribution. After receipt, he drove to music festivals such as Bonnaroo, where he sold his drugs to a customer base that was ripe for exploitation. He did so under a notable and well known trade name: "Molly Poppins."

The offense in this case was overt, deliberate, and targeted; it exposed numerous people in the defendant's supply-and-distribution chain to danger. The sentenced imposed should reflect as much.

*History and Characteristics of the Defendant*

The defendant has a criminal history score of zero. This should bear on his sentence, and it does. The Guidelines have adequately taken the defendant's lack of prior criminality into consideration. By virtue of his minimal criminal history, the defendant is not only eligible for relief from the statutory mandatory minimum five-year sentence, *see* 18 U.S.C. § 3553(f), but he receives an even further reduction in his Guidelines range, *see* U.S.S.G. § 2D1.1(b)(18). In other words, by virtue of his truthful interaction with the United States, his acceptance of responsibility, and his guilty plea, the defendant's Guidelines range begins at a sentence that is one-half of what would otherwise be the minimum sentence mandated by law.

Though the defendant's Criminal History Category is I, he was known to law enforcement as a drug distributor at various music festivals. (PSR, ¶ 9.) As above, the defendant's actions were not an isolated incident. The defendant was a known commodity, and

the fact that the defendant enjoys a record with no prior convictions does not mean that the conduct giving rise to his arrest was an anomaly.

Regardless, the United States intends to bring to the Court's attention certain facts concerning the defendant's history and characteristics that militate in favor of a sentence at the bottom of the Guidelines range or just below it. Given the nature of those facts, the United States respectfully submits that they are properly identified during a sidebar conference at the sentencing hearing.

***The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Deterrence, Protect the Public from Further Crimes of the Defendant, and Provide the Defendant with Needed Correctional Treatment***

The defendant is a drug dealer who sold his product in the Eastern District of Tennessee and elsewhere. As above, the United States submits that the instant offense is both serious and dangerous.

Further, a sentence in or very near the Guidelines range is necessary to provide adequate deterrence and promote respect for the law. Such a sentence will serve as a specific deterrent to the defendant, ensuring that, upon his release from custody, he is not tempted to return to drug dealing via his familiar modus operandi.

Moreover, a Guidelines sentence would serve as an effective general deterrent. *See, e.g., United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010) (quoting *United States v. Medearis*, 451 F.3d 918, 920-21 (8th Cir. 2006), for the proposition that "General deterrence . . . is one of the key purposes of sentencing . . . ."). Music festivals such as Bonnaroo are fertile

ground for drug dealers.[1]  Indeed, some attendees in the festival community apparently knew the defendant by his *nom de crime* and thought highly of his tradecraft, hopeful that others would follow in the defendant's footsteps after his arrest.  *See, e.g., The Shrooms and Molly Guy*, Reddit (https://www.reddit.com/r/bonnaroo/comments/6lrd3v/the_shrooms_and_molly_guy/) (last accessed Nov. 28, 2018) (one pseudonymous internet commenter from 2017 comparing drug dealers noting:  "He sounds great but he'll never live up to Molly Poppins.  We'll probably never see Molly Poppins again as he got busted this year but that was the most professional, reliable and fantastic drug dealer I've ever dealt with.  Bought from him all 3 years at roo.  Will never forget him. Next year I'll be looking for your shrooms and molly guy.  Hope he lives up to the hype.").  The Court should impose a sentence such that drug dealers who may be inclined to "live up to" the defendant's legend understand that there are serious consequences for choosing the defendant's criminal path.

Just as importantly, the so-called "dark web" is rapidly growing as a vehicle by which to effect drug sales, whether direct-to-user or, as in the defendant's case, to a distributor for further resale.  *See, e.g., Dark Web Drug Markets Growing 'Exponentially' as Police Busts Target Open Web*, Newsweek (Nov. 29, 2017) (https://www.newsweek.com/dark-web-sites-grow-europol-drugs-bust-knocks-20000-websites-offline-725446); *Shedding Light on the Dark Web*,

---

[1] *See, e.g., Bonnaroo bust: Over $30k of drugs found inside vehicle*, Tennessean.com (June 10, 2017) (https://www.tennessean.com/story/entertainment/music/bonnaroo/2017/06/10/bonnaroo-2017-drug-bust-over-30-k-drugs-found-inside-vehicle/386649001/); *Man busted with over 1,000 fake drugs at Bonnaroo: 'I'm doing God's work.'*, Tenneseean.com (June 8, 2017) (https://www.tennessean.com/story/entertainment/music/bonnaroo/2017/06/08/man-busted-over-1-000-fake-drugs-bonnaroo-im-doing-gods-work/381311001/); *UPDATE: "A very large amount of drugs" at Bonnaroo lands two Chattanooga men in jail*, WRCBtv.com (June 15, 2016) (http://www.wrcbtv.com/story/32229221/a-very-large-amount-of-drugs-at-bonnaroo-lands-two-chattanooga-men-in-jail).

The Economist (July 16, 2016) (https://www.economist.com/international/2016/07/16/shedding-light-on-the-dark-web). Using cryptocurrency, anonymizing tools such as Tor, and websites specifically designed to facilitate the transfer of illegal products, drug crime is entering a new era of convenience and obfuscation. Under cover of this illicit Information-Age marketplace, drug traffickers will undoubtedly be tempted by promises of anonymity and drugs delivered to one's doorstep. Such temptations call for acute intervention, and the Court should fashion a sentence that adequately deters others from attempting to use the dark web as a means of facilitating crime.

As above, the United States submits that certain facts suggest a low-end Guidelines sentence, or a sentence just below the Guidelines, is appropriate. With the Court's permission, the United States will advise the Court of those issues at a sidebar conference during the defendant's sentencing hearing.

*Parity in Sentencing*

The Court should sentence the defendant in a way that treats him like other similarly situated defendants. 18 U.S.C. § 3553(a)(6). An in-Guidelines sentence – as adjusted in view of sealed filings – achieves this end.

Parity in sentencing among federal defendants is a critical aspect of the impartial administration of justice. *United States v. Swafford*, 639 F.3d 265, 270 (6th Cir. 2011) ("[T]he point of the guidelines is to decrease sentencing disparities, an objective *furthered* by a within-guidelines sentence, as opposed to a sentence that varies above or below the advisory guidelines range.") (emphasis in original). This is contemplated by the Sentencing Guidelines, which are "almost certainly the best indication of ordinary practice since most sentences are within the

guidelines." *United States v. Simmons*, 501 F.3d 620, 626 (6th Cir. 2007) (internal quotation omitted); *see also Gall v. United States*, 552 U.S. 38, 54 (2007) ("As with the seriousness of the offense conduct, avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").

## CONCLUSION

For the above-stated reasons, the United States respectfully requests that the Court sentence the defendant to a term of imprisonment within the advisory Guidelines range or immediately below it.

> Respectfully submitted,
>
> J. DOUGLAS OVERBEY
> United States Attorney

By: *s/ Kyle J. Wilson*
Kyle J. Wilson
Assistant United States Attorney
1110 Market Street, Suite 515
Chattanooga, TN 37402
(423) 752-5140

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. The undersigned hereby certifies that a copy of the foregoing has been served on the PSR writer and counsel for the defendant *via* electronic mail.

> *s/ Kyle J. Wilson*
> Kyle J. Wilson
> Assistant United States Attorney